Dallas L. KELLER, Jack Cox, Charles D. Shinolt, Paul E. Moffitt, Dave Webster, Richard L. Tyree, James J. Johnson, Larry Whitlock, James E. Roe, Bob Ahrman, Leon Schlehuser, Robert L. Tempest, and Lynn H. Clark, Plaintiffs,

v.

CITY OF COLUMBUS, INDIANA, Defendant.

No. IP 89–179C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 13, 1991.

Michael A. Mullett, Columbus, Ind., for plaintiffs.

Michael R. Maine, Todd M. Nierman, Baker & Daniels, Indianapolis, Ind., for defendant.

MEMORANDUM ENTRY DISCUSSING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT CITY OF COLUMBUS, INDIANA

TINDER, District Judge.

The essence of this matter is whether Plaintiffs are covered by the Fair Labor Standards Act (the "Act" or "FLSA"), 29 U.S.C.A. §§ 201, *et seq.* (West 1965 & Supp. 1991). Under the Act, public fire fighting employees are entitled to premium compensation, at the rate of one and one-half times their regular rate, for time worked in excess of fifty-three hours per week. *Id.* at § 207(k); 29 C.F.R. § 553.201(a) (1990). Exempt from these wage and hour provisions is any "employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C.A. § 213(a) (West Supp.1991). "Executive capacity" is further defined in regulations promulgated by the Department of Labor's Wage–Hour Division at 29 C.F.R. §§ 541.1, 541.101–541.119 (1988).

Issues presented by Plaintiffs' Complaint have been furcated by a previous Order of this Court. The issue raised by the parties' cross-motions for summary judgment is whether the Plaintiffs, who are employed as captains and lieutenants in the City of Columbus Fire Department, are "executives" exempt from coverage of the FLSA. After reviewing the parties' helpful briefs and submissions, the Court determines that there is no genuine issue of fact and that the captains and lieutenants are executives; therefore, the Defendant is entitled to judgment as a matter of law.

I. BACKGROUND

Plaintiffs are or were employed by the City of Columbus, Indiana ("City") as fire fighters. Each plaintiff holds or held the rank of "Captain" or "Lieutenant" in the City's fire department. As of April 15, 1986, federal law governing wages and hours applied to the City's employment relationship with its fire fighters. From that date forward, the FLSA required municipal employers to compensate fire fighting "employees" at a rate of one and one-half times their regular (imputed) hourly rate for hours worked in excess of 53 hours per week. 29 U.S.C.A. § 207(k); 29 C.F.R. § 553.201(a) (1990). Each of the Plaintiffs claims to have worked such excess hours on a regular basis without the benefit of this premium compensation. The City counters that the Plaintiffs, who hold officer ranks in the department, are not "employees" but rather are "executives" specifically exempted from these provisions of the Act. Whether the Plaintiffs are exempt from the premium compensation requirement is a legal determination considered in the Discussion section. The facts relevant to this determination, as found by the Court pursuant to the Rule 56(c) standard for summary judgment, are presented below.

II. UNDISPUTED FACTS

Plaintiffs are present or former fire captains and lieutenants employed by the City of Columbus, Indiana. The City's Fire Department is headed by its Fire Chief. Reporting directly to the Fire Chief are the Deputy Chief and three Battalion Chiefs; these five staff officers constitute the "Board of Chiefs." The City's Fire Department operates on three rotating shifts of twenty-four hours "on," fourty-eight hours off. The Fire Chief and Deputy Chief are on duty weekdays until 5:00 p.m. and not on weekends. A single Battalion Chief is assigned to each 24–hour shift. After 5:00 p.m. and on weekends, the Battalion Chief is the only on-duty officer above the rank of captain. The Battalion Chief has an office at Fire Station No. 1.

There are five fire stations or "station houses" located in the Fire Department's jurisdiction. At each of the five fire stations and on each of the three shifts, a

single captain or lieutenant is assigned as the "house officer." The City employs six captains and nine lieutenants—one "house officer" at each location for each shift. Non-ranking fire fighters ("Firefighters") are assigned to a particular station house and report directly to the house officer.

Captains' base annual salary is $25,967, lieutenants' base annual salary is $25,115 and the base salary of a Firefighter is $21,887. Captains and lieutenants are classified as exempt executive employees by the City and do not receive premium overtime compensation. Captains and lieutenants receive a predetermined bi-weekly paycheck without regard to the number of days or hours actually worked. The amount of each paycheck is determined by dividing the officer's respective annual base salary by the number of pay periods in a year (26). If a captain or lieutenant is called in for an emergency on his off-duty time or held over beyond his scheduled shift, then he receives no additional compensation.

If a captain or lieutenant is absent for a day or less, his pay is not subject to reduction. The only time a captain's or lieutenant's pay varies is when he attends off-duty training in which case he is paid additional compensation at an hourly rate. Since April 15, 1986, there have been only seven occasions on which one or more captains or lieutenants received the additional training compensation. No captain or lieutenant has received more than eight hours' total additional compensation since April 15, 1986, and no captain or lieutenant has received more than two hours' additional training compensation in any one paycheck.

Fire Department regulations and policies are contained in "FDOs," and the captain or lieutenant is responsible for implementing such policies. From 1984 to March 26, 1990, the Fire Department had in place a written policy designated as FDO–16 [1] which provided, in part, that when a fire fighting employee who was a member of the Reserve Components of the Armed Forces or the National Guard took more than fifteen days' military leave in a calendar year during on-duty hours, his salary was subject to a prorated hourly reduction. On March 26, 1990, the Fire Department revised FDO–16 retroactive to April 15, 1986; FDO–16 is not applicable to the Chief, Deputy Chief, Battalion Chiefs, captains, or lieutenants. No deduction has ever been made from any captain's or lieutenant's pay under the authority of FDO–16.

Captains and lieutenants are responsible for ensuring that the equipment, property and personnel assigned to them are always ready for action. Captains and lieutenants are responsible for the lives and safety of the Firefighters in their command. A captain or lieutenant is generally the first officer at a fire scene or other emergency and is designated the Ground Commander. As such, he is in charge of the Firefighters and equipment until such time as he is relieved by the Battalion Chief. In implementing the Incident Command System and in determining how to attack the fire, he must make on-the-spot decisions and judgments in a variety of complex situations which determine whether a fire will be suppressed or lives will be saved. He leads his men in actual fire suppression activities after he is relieved of overall command at the fire scene by the staff officer (usually the Battalion Chief).

The City maintains detailed job descriptions, describing managerial functions of captains and lieutenants. These job descriptions were created in 1984 from interviews of captains and lieutenants who described the duties they perform. These descriptions were updated in 1988. Captains and lieutenants are not required to perform any tasks such as maintenance or cleaning at the station house. Notwithstanding, captains and lieutenants perform many of the same manual tasks they direct the fire fighters to do. The decision on which tasks are performed rests with the house officer. Captains and lieutenants are responsible for enforcing department regulations, carrying out department policies and reporting violations of Fire De-

---

**1.** This designation represents "Fire Department Order No. 16."

partment policies and regulations to the Battalion Chief.

The stated requirements for becoming a captain or lieutenant include the ability to command; the ability to make on-the-spot decisions in a variety of complex situations; and, the ability to analyze an emergency situation and determine the safest, most effective use of personnel and equipment. When the Fire Department is considering Firefighters for promotion to captain or lieutenant, it considers management and leadership qualities displayed by the Firefighter. A captain's or lieutenant's responsibility for the readiness of equipment and crew and his supervisory responsibility at the scene of a fire or emergency are his most important responsibilities. The captain or lieutenant makes critical decisions affecting Firefighters' safety.

The captain or lieutenant directs and supervises Firefighters in the daily maintenance of the station house and equipment. A station house routine is developed by the house officers at that station. Captains and lieutenants monitor and maintain records of tardiness and absenteeism of Firefighters. Captains and lieutenants have the authority to, and do, issue verbal reprimands to Firefighters. House officers are empowered by FDO–29 to issue a verbal warning to a Firefighter after a second-time tardy. However, house officers do not have the authority to use their own judgment to discipline the Firefighters. The captain or lieutenant is in charge of his fire station; Firefighters recognize that the captain or lieutenant is in charge of the station.

Captains and lieutenants must attend officers' meetings. After such meetings they report what was discussed and decided at the meeting and answer questions posed by Firefighters. When the Battalion Chief is on vacation or ill, a captain fills in as Battalion Chief. Captains and lieutenants initial all holdover overtime; DO–48 expressly provides this authority to captains and lieutenants. A captain or lieutenant has the authority to hold over a Firefighter into overtime, and it is within his discretion to choose whom to hold over.

FDOs 48, 28 and 25 expressly provide this authority and discretion to captains and lieutenants.

If a Firefighter is going to be late or absent, he notifies the captain or lieutenant. If a Firefighter needs to leave work early, he requests permission to do so from his house officer. In certain situations, the captain or lieutenant has the authority to grant permission to leave early; however, the ultimate authority on this issue resides with the Battalion Chief on duty. The captain or lieutenant and Battalion Chief generally must authorize a transfer or other personnel move, including a shift trade. However, on some occasions, captains and lieutenants have approved shift trades without prior Battalion Chief approval.

Captains and lieutenants do not make hiring, promotion or firing decisions. They do not evaluate the performance of the Firefighters for promotions. Firefighters are assigned to the station houses by the higher-ranking officers without control exercised by the captains or lieutenants.

Fire Department orders are extensive and dictate a great number of the daily tasks that must be performed at the station houses. Many day-to-day decisions that a house officer must make, both at the station house and at a fire scene cannot be, and are not, addressed in an FDO. Moreover, many FDOs specifically place discretion with the house officer. For example, FDO–23 permits sleeping only upon consent of the house officer; FDO–22 permits television viewing only upon clearance by the house officer; and, FDOs 48, 28, 25 and 36 all provide discretion to the house officer to make decisions on holdovers, overtime and responding to a labor dispute.

The captain or lieutenant is the only officer who has daily contact with the Firefighters in his command. He is at the station house for the entire shift and is in the best position to offer comment with regard to their skills and abilities. At times, a staff officer will solicit input from a captain or lieutenant with regard to a Firefighter's skills and abilities. The captain or lieutenant is responsible for ensuring the working order of all the equipment

at the station house. He must determine when supplies are needed and requisition supplies; however, he does not exercise the final decision to obtain supplies. He directs Firefighters within his command to make repairs or maintenance on equipment or property, and he has the discretion whether to call a repair service or to call the Battalion Chief if an outside vendor is needed.

The captain or lieutenant serves as an internal dispute mediator at a station house. Firefighters go to the captain or lieutenant with problems, and it is the captain or lieutenant who will, if possible, resolve the issue. House officers have an office at the fire station while Firefighters do not. The Deputy Chief and Chief visit the fire stations only sporadically and for limited periods of time. The on-duty Battalion Chief is at Station No. 1 approximately two hours in the morning each day and then leaves, returning some 11–12 hours later. During this time, the Battalion Chief visits the other fire stations, but only for limited periods of time. The captain or lieutenant is the only officer at the fire station during most of the shift.

## III. DISCUSSION

### A. *Summary Judgment Standard*

A party is entitled to summary judgment if,

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating that absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

A court must enter summary judgment against the non-moving party if, after adequate time for discovery, the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. at 2552. A party opposing summary judgment has the burden of producing some evidence to that effect, and may not rest merely on its own allegations. *Anderson*, 477 U.S. at 244, 106 S.Ct. at 2508. Furthermore, a factual dispute must be outcome determinative to preclude summary judgment. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988). Thus, the mere assertion of a factual dispute cannot defeat the motion for summary judgment. *Anderson*, 477 U.S. at 244, 106 S.Ct. at 2508.

### B. *General Principles When Applying FLSA Exemptions*

Minimum wage, maximum hour and premium compensation provisions of the FLSA apply to persons who meet the definition of an "employee." Exempt from these wage and hour provisions of the Act are "any employees employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C.A. § 213(a)(1). Defendant bears the burden of establishing that the Plaintiffs are exempt from coverage of the Act. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Idaho Sheet Metal Works v. Wirtz*, 383 U.S. 190, 209, 86 S.Ct. 737, 749, 15 L.Ed.2d 694 (1966). Exemptions to the FLSA are to be construed narrowly. *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1143 (3d Cir.1983).

■ The rules and regulations of the Wage and Hour Division of the United States Department of Labor interpreting 29 U.S.C.A. § 213(a)(1) are entitled to great weight. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 226 n. 11 (7th Cir.1972). These regulations provide two different tests to determine whether an employee is an executive. 29 C.F.R. § 541.1 (1988). The provisions of 29 C.F.R. § 541.1(a-f) and § 541.2(a-e) constitute the six-element "long test" while § 541.1(f) and § 541.2(e)(1) constitute the three-element "short test." A court must apply the short test if an employee is paid more than $250 per week. *Id.* at §§ 541.-1(f) & 541.119(a).[2]

■ Columbus Fire Department captains and lieutenants earn in excess of $250 per week; thus, the City must prove that Plaintiffs are bona fide executives using the short test. *Wilson v. City of Charlotte, N.C.*, 717 F.Supp. 408 (W.D.N.C.1989). Under the short test, the City must prove that captains and lieutenants (1) are compensated on a salary basis, (2) have management of the Fire Department or a recognized subdivision as their primary duty, and (3) customarily and regularly supervise the work of two or more other employees. 29 C.F.R. § 541.1(f).[3] Because both parties agree that the Plaintiffs regularly supervise the work of two or more other employees, the following subsections discuss whether the Plaintiffs meet the first two prongs of the short test: the "salary basis test" and the "primary duty test."

### C. *Salary Basis Test*

Whether an employee is employed on a "salary basis" is determined by the following regulation:

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a). The theory behind this definition is that the value of a salaried employee's work is not compensated on a per hour basis; the executives' annual salary recognizes their value to the employer and not the number of hours logged. *Abshire v. County of Kern, Cal.*, 908 F.2d 483, 486 (9th Cir.1990); *Thomas v. County of Fairfax, Va.*, 758 F.Supp. 353, 359 (E.D.Va.1991). Plaintiffs do not dispute that they are paid an annual salary of $25,967 (captains) and $25,115 (lieutenants) divided into twenty-six equal pay checks. Thus, they will meet the salary test unless some other element of the City's compensation plan runs afoul of the regulations.

Aside from requiring that executives literally receive a "salary," the regulations limit the conditions upon which an employer may reduce or enhance a salaried employee's compensation. The aim of these restrictions is to determine whether an employee actually receives all compensation in

---

**2.** Presumably, the short test, which has fewer elements to meet than the long test, is triggered by a weekly amount of pay because Congress believed that persons making more than $250 per week were more likely to be employed in the kinds of positions Congress wished to exempt from coverage. In such cases, the short test requires the employer to prove fewer specific "executive-level" tasks performed by the employee (see footnote three).

**3.** Under the "long test," which applies to employees making fewer than $250 per week, the employer must prove *also* that the employee (1) has the authority to hire or fire other employees or whose suggestions in this regard will be given particular weight, (2) customarily and regularly exercises discretionary powers, and (3) does not devote more than 20 percent of his or her hours of work to activities which are not closely related to management and direct supervision. 29 C.F.R. § 541.1(c)–541.1(e).

the form of a salary or whether the employee is in fact compensated on a variable quantitative or qualitative basis. Primary among these is a provision prohibiting per-hour deductions for certain absences from work:

An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

Deductions may not be made for absences of an employee caused by jury duty, attendance as a witness, or temporary military leave.

29 C.F.R. § 541.118(a)(1) & (a)(4). Thus, a salaried employee's pay may not be docked on either an hourly or daily basis for absences due to temporary military duty. *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 184 (3d Cir.1988). On the other hand, it is permissible to dock leave time accrued by a salaried employee for absences of less than one day. 29 C.F.R. § 541.-118(a); *International Ass'n of Firefighters, Alexandria Local 2141 v. City of Alexandria, Va.*, 720 F.Supp. 1230, 1232 (E.D.Va.1989).

Plaintiffs claim they are not executives, because their pay was "subject to reduction" for military absences. There is no dispute that FDO-16 created a procedure by which the City could reduce captain's and lieutenant's pay in hourly increments on a pro-rata basis. Further, it is a fact that the City has never made such a deduction from a captain's or lieutenant's salary. A number of cases have considered whether an employer must make an actual deduction to make an employee's salary impermissibly "subject to reduction." Some courts have held that, absent any actual deduction, a policy allowing hourly deductions will not fail the "salary basis" test. *Atlanta Prof. Fire Fighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 805 (11th Cir.1991); *Harris v. District of Columbia*, 709 F.Supp. 238, 241 (D.D.C.1989). Most decisions have held that an employ-

er's policy allowing such deductions, whether applied or not, makes the employees' salary "subject to reduction." *Abshire*, 908 F.2d at 487 n. 4 (citing lower court cases); *Granger v. City of Muncie, Ind.*, No. 87-128 (S.D.Ind. June 30, 1989); *Banks v. City of North Little Rock, Ark.*, 708 F.Supp. 1023 (E.D.Ark.1988); *Hawks v. City of Newport News, Va.*, 707 F.Supp. 212, 215 (E.D.Va.1988); *Persons v. City of Gresham, Or.*, 704 F.Supp. 191, 194 (D.Or. 1988); *Knecht v. City of Redwood, Cal.*, 683 F.Supp. 1307, 1311 (N.D.Cal.1987). For the reason discussed below, this Court need not cast its lot toward either position, because this issue is decided on other grounds.

Effective March 26, 1990, the City stated in a document filed in this Court that FDO-16 no longer applied to employees classified as exempt, including captains and lieutenants. This statement was supported by a copy of the revised version of FDO-16 and an affidavit of the Fire Chief. The amended policy was retroactive to April 15, 1986. The City argues that this repentant move qualifies its prior policy for absolution under 29 C.F.R. § 541.118(a)(6). That section provides:

The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case.... Where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6). This regulation has been interpreted to create a "window of correction" for employers: if an employer repays money incorrectly withheld from a salaried employee and the employer makes an affirmative statement that the policy will not apply in the future, then any negative effect the policy may have had on the employee's salaried status is absolved. *Hartman v. Arlington County, Va.*, 903 F.2d 290 (4th Cir.1990), *aff'g*, 720 F.Supp. 1227 (E.D.Va.1989); *Thomas*, 758 F.Supp.

at 357 n. 8; *City of Alexandria*, 720 F.Supp. at 1232; *Hawks*, 707 F.Supp. at 215; *Chadwick v. City of Norfolk, Va.*, No. 88–248–N (E.D.Va. Dec. 19, 1988) (oral opinion); *Harkins v. City of Chesapeake, Va.*, No. 88–254–N (E.D.Va. Dec. 2, 1988) (oral opinion). If the section applies, then it is as if the employees' salaries were never "subject to reduction."

There is discussion in both parties' briefs regarding whether a policy in effect for over three years is "inadvertent." Plaintiffs argue that such a long-running policy cannot be inadvertent. Defendant replies that a DOL Letter Ruling requires "regular or recurring" deductions, which did not occur here because the policy was never applied. *Fair Labor Standards Handbook*, App. III, at 69. This Court is of the opinion that this discussion loses sight of the purpose of 29 C.F.R. § 541.118(a)(6). The former policy of hourly deductions allowed by FDO–16 does not go to the pith of the employment relationship; rather, it is simply a trap that may place in jeopardy a salaried status already established. As the regulation's text and previous cases have shown, the "window of correction" applies rather broadly; employers will not be penalized for technical errors that do not go to the substance of the relationship.

Whether the policy allowing hourly deductions was inadvertent need not be considered. The regulation provides that the "window of correction" option applies when a deduction is inadvertent *"or* is made for reasons other than lack of work." 29 C.F.R. § 541.118(a)(6) (emphasis added). Thus, if a policy allowed a deduction "for reasons other than lack of work," then the "window of correction" is open regardless whether the error was inadvertent. In this case, the policy allowed a deduction for missing work, not because there was a lack of work. The tangential debate about whether temporal duration of the policy qualified as "inadvertent" is unnecessary.

Seemingly accepting the weight of authority that the City's policy may be re-versed retroactively, Plaintiffs attack the timing and form of the City's amended FDO–16. Citing *Hawks v. City of Newport News*, Plaintiffs claim that there can be no certainty that the revision was properly adopted or that the City will not reverse its course and again subject captain's and lieutenant's pay to such deductions. On this basis, they would have the Court discount the statement. Further, Plaintiffs argue that the revised policy should not be considered at the summary judgment stage because it anteceded discovery deadlines and therefore would not be admissible at trial.

■ As to the first argument, if the revision is admissible, the Court accepts that the revised FDO–16 means what it says and that the policy will be out of effect.[4] Regardless whether the revised FDO–16 survives would be admissible at trial, the timing of the revision otherwise complies with 29 C.F.R. § 541.118(a)(6). By its own terms, that section contains no time limit within which an employer must correct a deduction. That the policy change occurred after the lawsuit commenced is of no independent significance; it is irrelevant that the lawsuit brought the errant policy to the City's attention. *Harkins*, at 3–4; *Chadwick*, at 4. Plaintiffs' reliance on *Hawks* is unpersuasive; in that case the City attempted to effect the policy change in the midst of trial. Because the defendant employer in that case did not provide the revised policy in response to discovery requests and it was not on their exhibit list, the court denied its admission. *Hawks*, 707 F.Supp. at 215.

■ The revised FDO–16 would be admissible at trial and therefore may be considered under Fed.R.Civ.P. 56(e) to reach a summary judgment. Defendant satisfied its obligation to supplement discovery by filing a revised version of FDO–16 on the Plaintiffs prior to filing its Motion for Summary Judgment. Also, Defendant had pre-

---

**4.** Should the City change its course, then this would be a strong indication that the captains and lieutenants are hourly employees entitled to protection of the FLSA. At that time—not at this time—plaintiffs would have an unimpeachable demand for FLSA coverage because the exemption would no longer apply.

viously properly reserved the right to supplement its final exhibit list. In *City of Alexandria* and *Hartman,* decisions rendered after *Hawks,* the courts allowed the employers to modify their policies under circumstances similar to those presented here. Through its modification of FDO–16 on March 26, 1990, retroactive to April 15, 1986, the City used properly the window of correction provided by 29 C.F.R. § 541.-118(a)(6).

A few decisions have been occupied with the question whether captains and lieutenants can be salaried if their bi-weekly paycheck varies with the number of hours worked in that pay period. At least one court has held that compensation that varies from period to period is indicative of an hourly basis, even if the fluctuation in hours is "scheduled." *Thomas,* 758 F.Supp. at 361. A recent circuit court decision held that the salary test is satisfied if the amount of pay is known for each pay period, even if it fluctuates from period to period with the number of scheduled hours. *City of Atlanta,* 920 F.2d at 805. The captains and lieutenants employed by the City of Columbus are paid an equal amount each pay period, regardless the number of hours worked; therefore, this issue is not of concern here.

Although they generally receive equal pay checks, captains and lieutenants receive extra pay for off-duty hours spent in mandatory training sessions. Plaintiffs claim these payments are inconsistent with salaried status. They argue a bona fide salary would cover all time spent related to fire fighting, including training time; additional payments indicate that their pay varies with the number of hours worked. *Banks,* 708 F.Supp. at 1024; *Knecht,* 683 F.Supp. at 1312. This argument and application to these facts are flawed in two respects.

■ First, captains and lieutenants do not receive additional pay for other time spent on duty in excess of their regular shift. If they are held over or required to come in on call, then—unlike line Firefighters—they do not receive any additional hourly compensation. The training time

payments are a special form of compensation and are not indicative of employment on an hourly basis. Second, additional money given as an incentive for off-duty training activities does not extinguish an officer's salaried status. The regulations provide that "additional compensation besides the salary is not inconsistent with the salary basis of employment." 29 C.F.R. § 541.118(b). Thus, the City may pay an executive who is a captain or lieutenant additional hourly compensation for training activities. *City of Alexandria,* 720 F.Supp. at 1232.

The totality of the undisputed facts directs the conclusion that the captains and lieutenants are paid on a salary basis. The only pitfall that *may* have made their salaries impermissibly "subject to reduction" was cured by the policy change through the revised FDO–16. If the City has carried its burden of proving by undisputed facts that the officers' primary duty was managerial, then the officers are considered executives under the FLSA.

### D. *Primary Duty Test*

The regulations provide a set of factors to consider to determine whether an employee has management as his or her primary duty. 29 C.F.R. § 541.103. However, the regulations make clear that a "determination of whether an employee has management as his primary duty must be based on all the facts in a particular case." *Id.* A "rule of thumb" is that an executive will spend more than fifty percent of the time in management and supervision; logically, an executive's "primary duty" will likely occupy more than half his or her working time. As described in 29 C.F.R. § 541.102(a) & (b), the range of tasks considered managerial or supervisory are often easily recognized. Each of the examples provided in the regulation has an easily recognizable indicia of control, discretion and independent decision-making.

Within the Columbus Fire Department, an officer's rank signifies respect and responsibility. There is a hierarchy of Department and station house management. Officer positions are earned based upon,

among other things, the person's ability to make independent decisions and exercise control over situations. Captains and lieutenants perform many of the same manual tasks that they direct other firemen to do. However, the magnitude of the officers' main responsibilities makes these other tasks of secondary importance.

As the district court found in *City of Alexandria,* 720 F.Supp. at 1233, this Court finds that the officers' primary duty is management because they manage the entire station house during their shift. Plaintiffs argue that a Battalion Chief is on duty for the duration of every shift and that this person exercises authority over the lower-ranking captains and lieutenants. While the Battalion Chief is the officer ultimately in charge of all station houses, the question is whether the captains and lieutenants are *sufficiently* managerial to qualify as executives. A review of the facts describing these officers' duties and authority makes clear that they meet the regulatory standard for managerial employees. The officers do not merely supervise other employees, they command the Firefighters at fire scenes and choose and direct their activities at the station house. Although the facts of this case are determinative on this issue, the Court notes that other courts have found that fire department officers holding similar ranks and performing very similar duties were exempt executives. *City of Atlanta,* 920 F.2d at 805; *Hartman,* 903 F.2d at 292; *City of Alexandria,* 720 F.Supp. at 1233; *Sarver v. City of Roanoke,* No. 88–0179–R, 1990 WL 83327 (W.D.Va. June 15, 1989); *Chadwick, supra; Harkins, supra.*

Even if an employee spends less than fifty percent of the time performing tasks of management, then management may yet be the primary duty if other factors support that conclusion. 29 C.F.R. § 541.103; *York v. City of Wichita Falls, Kan.,* 944 F.2d 236, 242 (5th Cir.1991); *Hartman,* 720 F.Supp. at 1229. Those factors are (1) the

relative importance of the managerial duties as compared with other types of duties, (2) frequency with which the employee exercises discretionary powers, (3) relative freedom from supervision, and (4) relationship between employee's salary and wages paid other employees for the same kind of non-managerial work. It is unclear how much time the captains and lieutenants spend on overt managerial tasks; however, based upon all of the facts, the Court determines that their primary duty is management.

Plaintiffs argue that, considering potential premium overtime benefits, a Firefighter's annual earnings may not be substantially different from the lieutenants' salaries. If this argument is directed to item (4) above, then it is misguided. That factor considers the amount of money paid "for the same kind of non-exempt work," which requires a comparison of pro-rata per-hour pay—not a comparison of potential annual salaries. It is inconsequential that Firefighters may work more hours and thereby bring their annual earnings· closer to the fixed salary paid to captains and lieutenants. The relevant fact is that captains and lieutenants make substantially more per hour when they are performing the same tasks they assign to the firemen they supervise.[5]

Other factors to be considered are satisfied also. Although the house officers are directed by the higher ranking officers and procedural FDOs, the independent judgment they have authority to exercise initially at fire scenes is undoubtably their most important function. The significance of their work cutting grass and cleaning floors pales in comparison to their responsibility for keeping the Firefighters and equipment at the ready. They are ranked and paid as officers precisely because of their managerial skills and position of responsibility.

---

**5.** As discussed above, the argument that captains and lieutenants are paid on a salary basis is supported precisely because their earnings do not vary with the number of unscheduled "overtime" hours they may work. Although the regular Firefighters' pay is theoretically based on an annual salary figure ($21,887), they are paid on an hourly basis because they may be docked pay per hour for absences *and* they are compensated per hour for all additional work.

Specific facts set forth by the Defendant provide sufficient uncontroverted evidence from which this Court may determine the legal effect of that evidence. Plaintiffs submissions either do not set forth specific facts or do not place in dispute material facts. Upon this evidence, the Court determines that Defendant has met its burden of proving that the Plaintiffs are executives exempt under the FLSA.

## IV. CONCLUSION

Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED. Judgment will be entered holding that Plaintiffs are executives exempt from the overtime compensation requirements of the FLSA.