**Vernon L. SIMMONS, et al.**

v.

**CITY OF FORTH WORTH, TEXAS.**

**Civ. A. No. 4:90–CV–688–Y.**

United States District Court,
N.D. Texas,
Fort Worth Division.

June 12, 1992.

Bruce Craig Deats, Martha Powell Owen, Van Os Deats Rubinett & Owen, Austin, Tex., for plaintiff.

Ralph Wade Adkins, City Atty., City of Fort Worth, Amy L. Nickell, Bettye S. Springer, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

MEANS, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment filed on June 19, 1991, and supplemented on July 19, and Plaintiffs' Motion for Partial Summary Judgment filed on August 23. Plaintiffs, who are all employed as either district chiefs or deputy chiefs with the Fort Worth Fire Department, filed this lawsuit against the City of Fort Worth ("the City") alleging violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (1965 & Supp.1991).[1] Each of the plaintiffs claim to have worked excess hours on a regular basis without the benefit of overtime compensation. The City of Fort Worth counters that the plaintiffs, who hold officer ranks in the department, are exempt from the FLSA's overtime provision because they are bona fide executives as that term is defined in ·29 U.S.C. § 213(a)(1) (1965 & Supp.1991).[2] After carefully reviewing the parties' briefs, responses, replies, affidavits, and other evidence submitted herein, this Court determines that there is no genuine issue of material fact and that the district and deputy chiefs are executives under the Fair Labor Standards Act. Therefore, Defendant is entitled to summary judgment as a matter of law.

### I.

The plaintiffs are twenty-one fire fighters who are or were employed by the City since at least April 15, 1986, as district chiefs or deputy chiefs in the Fort Worth Fire Department.[3] The City of Fort Worth is divided into five geographical fire districts, each of which is comprised of district fire companies which are assigned to between five and ten geographically separated fire stations operating within the dis-

---

1. As of April 16, 1986, federal law governing wages and hours applied to the City's employment relationship with its fire fighters. From that date forward, the FLSA required municipal employers to compensate fire fighting "employees" at a rate of one and one-half times their regular hourly rate for hours worked in excess of fifty-three hours per week. Section 207(k) specifically provides, in pertinent part:

   No public agency shall be deemed to have violated [the overtime provision] with respect to the employment of any employee in fire protection activities ... if—

   (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours or (B) the average number of hours (as determined by the Secretary pursuant to Section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

   (2) in the case of such an employee to whom a work period of at least 7 but not less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) or paragraph (1)) bears to 28 days,

   compensation at a rate not less than one and one-half times the regular rate at which he is employed.

   29 U.S.C. § 207(k) (Supp.1991); 29 C.F.R. § 553.201(a) (West Supp.1991).

2. Executive capacity is further defined in regulations promulgated by the Department of Labor's Wage–Hour Division. *See* 29 C.F.R. §§ 541.1, .101–.119 (1988).

3. The ranks which a fire fighter with the City of Fort Worth may attain, beginning with the entry-level positions, are fire fighter, engineer, lieutenant, captain, district chief, and deputy chief.

trict. The fire chief heads the City's fire department.

Each of the fire deputy chiefs maintain one of the divisions of the Fort Worth Fire Department and have direct and indirect supervisory and managerial authority over between fifteen and 186 other fire department personnel, including the fire district chiefs assigned to their respective divisions. The fire deputy chiefs are responsible for planning, organizing, directing and evaluating the work of the entire division and may be required to act as the fire chief in his absence. The fire deputy chiefs supervise the dispatching of fire alarms and the in-service training program for members of the Fort Worth Fire Department. When necessary, fire deputy chiefs are responsible for directing fire fighting operations. The fire deputy chiefs are also responsible for planning the operations of their divisions, selection of equipment, apparatus, and personnel, administering the employee evaluation program, and training staff members. They are active participants in the development of fire department policies; they prepare their divisions' budgets and control their expenditures; they coordinate the divisions' work with each other and other private and public agencies, address civic and other groups on the activities and programs of the fire department, and investigate citizen complaints.

The fire district chiefs are responsible for planning, organizing, and directing the respective fire companies within their geographical district during their assigned shifts. Each of the fire district chiefs are directly or indirectly responsible for supervising between nine and thirty-seven other employees of the Fort Worth Fire Department. Fire district chiefs may, in emergencies, assume and exercise command over fire rescue, fire salvage, and fire fighting operations when no superior officer is present. Generally, the fire district chiefs evaluate conditions at the scene of a fire and request assistance as the situation at the scene of a fire warrants. Fire district chiefs also schedule and supervise drills and other fire fighter training activities for the fire companies, and are directly responsible for the readiness of the fire district manpower, apparatus, and equipment in their respective districts. Moreover, fire district chiefs complete reports on their districts' personnel, equipment, drills, fires, accidents and injuries, evaluate personnel performance, and prepare logs of daily activities and emergencies within their districts. They may also supervise the Fire Alarm and Dispatching Division or the Fire Training Center as necessary. Finally, the fire district chiefs assist in preparing budgets and establishing goals and objectives for their assigned districts.

Some fire deputy chiefs and all but two district chiefs work particular shifts where they are on duty for twenty-four hours and then off duty for forty-eight hours.[4] The remainder of the Plaintiffs work regular forty-hour work weeks. All of the fire deputy chiefs and fire district chiefs who perform shift work regularly receive a bi-weekly paycheck which fluctuates according to the number of shifts they work during the particular pay period.[5] Nonetheless, all of the Plaintiffs regularly receive a predetermined amount of at least $250 in base salary per week which is not subject to reduction because of variations in the quality or quantity of the work performed. Moreover, all of the plaintiffs receive at least a full eighty hours' pay each

4. The City of Fort Worth utilizes an FLSA work cycle of twenty-eight days for its fire department employees working a twenty-four hour shift rotation. Thus, the maximum number of hours that an employee working a twenty-four hour shift rotation may average in a twenty-eight day work cycle without the City having to pay overtime is 212 hours or fifty-three hours per week. See also 48 Fed.Reg. 40,519 (Sept. 8, 1983). The fire department's employees who work a twenty-four hour shift rotation are regularly scheduled to work 224 hours a cycle, or fifty-six hours per week. Non-exempt employees to whom the City pays overtime, then, earn an average of twelve hours of overtime per twenty-eight day work cycle.

5. These plaintiffs who do shift work can consult a calendar to determine, at the beginning of the year, the precise amount of base salary they will receive each pay period throughout the year by counting the number of shifts they are assigned to work each biweekly pay period.

pay period regardless of the number of hours they work. At all times since March 1, 1984, the City of Fort Worth has a written policy in effect that:

[a]ll regular employees shall be guaranteed pay for a full 80–hour pay period, except for absence that is classified as "absent without pay." If an employee does not actually work 80 hours in a pay period because of "inactive hours" as defined herein, he shall nevertheless receive 80 hours pay, but shall, if the necessity exists, work an amount of time equal to the "inactive hours" before receiving more than 80 hours pay. "Inactive hours" shall be made up if the occasion demands during the week in which they occur. If no necessity exists for making up "inactive hours" within the week in which they occur, no further requirements for making up these hours shall be made.

*Original Personnel Regulation C–4.* This policy applies both to the fire deputy and district chiefs.

On October 9, 1990, the City of Fort Worth amended its personnel regulations addressing overtime compensation to provide expressly:

There shall be no deductions from the compensation of employees exempt from the overtime provisions of the Fair Labor Standards Act for periods of absence from work of less than one day, if such employees have no accumulated sick or annual leave, except in cases of disciplinary action.

*Amended Personnel Regulation C4— Overtime Pay/Compensatory Time.* Prior to this time, the City did not have an express written policy or regulation in effect to ensure that these deductions would not be made. On November 23, 1990, the City of Fort Worth reimbursed over 200 active and terminated employees out of approximately 1000 exempt employees in all departments who had received deductions from their pay during the period from April 15, 1986, through October 9, 1990, for absences of less than one day when their sick or annual leave accounts had reached a zero balance. The total amount of money reimbursed was approximately $15,000. Although deductions were made in cases of fire department employees, the City of Fort Worth has never reduced its fire deputy or district chiefs' base salary for any absence of less than one day, even if the employee had a zero balance in his sick leave or vacation leave accrual amounts.

## II.

Pursuant to Fed.R.Civ.P. 56(c), a party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

A court must enter summary judgment against the non-moving party if, after adequate time for discovery, the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2555. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. at 2552. A party opposing summary judgment has the burden of producing some evidence to that effect, and may not rest merely on its own allegations. *Anderson,* 477 U.S. at 244, 106 S.Ct. at 2508. Furthermore, a factual dispute must be outcome determinative to

preclude summary judgment; the mere assertion of a factual dispute cannot defeat the motion for summary judgment. *Anderson,* 477 U.S. at 244, 106 S.Ct. at 2508.

█ Minimum wage, maximum hour, and overtime compensation provisions of the FLSA apply to persons who meet the definition of an "employee." Exempt from these wage and hour provisions, however, are "any employees employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) (1965 & Supp.1991). The City bears the burden of establishing that the plaintiffs are exempt from coverage under FLSA. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Idaho Sheet Metal Works v. Wirtz,* 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966). Moreover, exemptions from the minimum wage and overtime provisions of this chapter are narrowly construed against the employer seeking to assert them and applied only to those situations "plainly and unmistakably within their terms and spirit." *Brennan v. Texas City Dike & Marina, Inc.,* 492 F.2d 1115 (5th Cir.), *cert. denied,* 419 U.S. 896, 95 S.Ct. 175, 42 L.Ed.2d 140 (1974).

█ The rules and regulations of the Wage and Hour Division of the United States Department of Labor interpreting 29 U.S.C. § 213(a)(1) are entitled to great weight. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). These regulations provide two different tests to determine whether an employee is an executive. 29 C.F.R. § 541.1 (1988). The provisions of 29 C.F.R. § 541.1(a-f) and § 541.-2(a-e) constitute the six-element "long test," while 29 C.F.R. § 541.1(f) and § 541.-2(e)(1) constitute the three-element "short test." A court must apply the short test if an employee is paid more than $250 per week. *Id.* at §§ 541.1(f), 541.119(a).

█ Because both parties admit that the fire deputy chiefs and fire district chiefs are paid in excess of $250 per week, this Court shall utilize the short test to determine whether Plaintiffs are bona fide executives. To qualify as a bona fide executive exempt from overtime compensation under the short test, the City must prove the following:

(1) The employee is compensated on a salary basis at a rate of not less than $250 per week; and

(2) The employee's primary duty consists of management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(3) The employee's responsibilities include the customary and regular direction of the work of at least two or more other employees.

29 C.F.R. § 541.1(f). *See also York v. City of Wichita Falls, Tex.,* 944 F.2d 236, 241–42 (5th Cir.1991); *International Ass'n of Fire Fighters, Alexandria Local 2141 v. City of Alexandria,* 720 F.Supp. 1230, 1233 (E.D.Va.1989), *aff'd,* 912 F.2d 463 (4th Cir. 1990). This Court shall now examine each of these factors in turn.

A.  Whether the plaintiffs are compensated on a salary basis.

█ Since neither party denies that the fire deputy chiefs and fire district chiefs are paid in excess of $250 per week, the only disputed issue under the first prong of the short test is whether the district chiefs and deputy chiefs are compensated "on a salary basis" as that term is used in the FLSA. The Department of Labor regulations provide that an employee is paid "on a salary basis" when:

[the employee] regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* Subject to the exception provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a) (emphasis added). Although an employer may make deductions from the employee's salary for personal reasons or for sickness or disability if they are for more than one day, the employer may not make any deductions for absences which are for less than one day. 29 C.F.R. § 541.118(a). *See also Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2nd Cir.1983) ("salaried professional employee may not be docked pay for fractions of a day of work missed").

■ The fact that some of the plaintiffs were assigned to work particular shifts does not destroy their salaried status:

> Another type of situation in which the requirement [of being paid on a salary basis] will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations [$250] in any week in which the employee performs any work.

29 C.F.R. § 541.118(b). While many of the fire deputy and district chiefs are assigned to work specific shifts each pay period, the City also has a policy which guarantees that "all regular employees," including both twenty-four hour shift rotation employees and forty-hour per week employees, will be paid for a full, eighty-hour pay period regardless of the number of hours they work. This provision ensures that all fire deputy chiefs and fire district chiefs, even those performing shift work, regularly receive each week in which they perform any work a predetermined amount of base salary in excess of $250 per week. *See Atlanta Professional Firefighters Union, Local 134 v. Atlanta,* 920 F.2d 800, 805 (11th Cir.1991) (holding fire captains who regularly perform shift work and who receive a fluctuating biweekly paycheck are paid on a salary basis under FLSA).

■ The undisputed evidence is overwhelming that at least until October 9, 1990, the date when the Fort Worth City Council amended its overtime compensation policy, deputy and district chiefs were subject to deductions in their pay for absences of less than a day. The labor regulations, however, provide that when impermissible deductions were inadvertently made, exemptions will not be considered to have been lost if the employer reimburses the employee for deductions and promises to comply in the future. *See* 29 C.F.R. § 541.-118(a)(6).[6]

Courts have interpreted this regulation to create a "window of correction" for employers: provided that the employer repays money incorrectly withheld from a salaried employee and affirmatively promises not to apply the policy in the future, then any negative effect the policy may have had on the employee's salaried status is absolved. Thus, this window of correction results in the employee's salary never being subject to reduction at all. *Hartman v. Arlington County, Va.,* 903 F.2d 290 (4th Cir.1990), *aff'g,* 720 F.Supp. 1227, 1230 (E.D.Va.1989); *Thomas v. County of Fairfax, Va.,* 758 F.Supp. 353, 357 n. 8 (E.D.Va.1991); *International Ass'n of Fire Fighters,* 720 F.Supp. at 1232.

Both parties address whether a city-wide policy in effect for over four years and resulting in over 20% of the City's exempt employees' suffering improper deductions is "inadvertent." In arguing that such a long-running policy cannot be inadvertent, Plaintiffs rely on *Abshire v. County of Kern,* 908 F.2d 483 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), which states that this regulatory window of correction "only ap-

---

**6.** 29 C.F.R. § 541.118(a)(6) states in pertinent part:

> (6) The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, *where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.*

29 C.F.R. § 541.118(a)(6) (emphasis added).

plies to an employer that makes a one-time improper deduction and then corrects its error." *Id.* at 489. Other courts, however, have held that the "window of correction" is available to employers which erroneously made multiple deductions from exempt employees' pay. *See, e.g., Keller v. City of Columbus, Ind.,* 778 F.Supp. 1480, 1487 (S.D.Ind.1991) (holding city properly utilized window of correction to preserve its exempt status *after* the lawsuit commenced despite three-year policy of making unauthorized deductions); *Hartman v. Arlington County, Va.,* 720 F.Supp. at 1230 (two years and ten months). Moreover, the *Keller* court held that the window of correction applies rather broadly:

> Whether the policy allowing hourly deductions was inadvertent need not be considered. The regulation provides that the "window of correction" option applies when a deduction is inadvertent *"or is made for reasons other than lack of work."* 29 C.F.R. § 541.118(a)(6) (emphasis added). Thus, if a policy allowed a deduction "for reasons other than lack of work," then the "window of correction" is open regardless whether the error was inadvertent. In this case, the policy allowed a deduction for missing work, not because there was a lack of work. The tangential debate about whether temporal duration of the policy qualified as "inadvertent" is unnecessary.

778 F.Supp. at 1487.

Moreover, the plaintiffs' narrow interpretation of the window of correction in § 541.118(a)(6) is not supported by the language of the regulation itself. The regulation merely provides that the exemption will not be lost if the employer reimburses the employee "for such deductions and promises to comply in the future." This Courts finds that the City has fully complied with the conditions in the regulation. The uncontroverted summary judgment evidence demonstrates that on November 23, 1990, the City of Fort Worth fully reimbursed all of its exempt employees whose pay had suffered deductions from April 15, 1986, through October 9, 1990 for absences of less than a day when their sick or annual leave accounts had reached a zero balance.

Significantly, the City has never deducted from any of Plaintiffs' pay for absences of less than a day.

The summary judgment evidence indicates that the impetus for the City's decision to modify its personnel regulations on October 9, 1990, was to clarify the City's policy that the pay of its exempt employees would not be subject to deductions for absences of less than a day and to ensure that the City complied with the FLSA. The City took these curative steps in expressly amending its personnel regulations and in reimbursing its employees in order to preserve the exempt status of all its exempt employees, including the plaintiffs, pursuant to the provisions in 29 C.F.R. § 541.118(a)(6).

This Court finds from the undisputed summary judgment evidence that the district chiefs and deputy chiefs are compensated on a salary basis at a rate in excess of $250 per week. Plaintiffs have not provided the Court with evidence that any of the reductions in the pay of the City's exempt employees were anything other than inadvertent, nor have they brought forth any evidence which proves that any of these deductions were made from the pay of exempt employees because of a lack of work. The record is thus devoid of evidence which could establish that the City has ever had a policy of making deductions from its exempt employees pay for absences of less than one day. Finally, none of the district chiefs or deputy chiefs has ever had any impermissible deduction made from his salary which would change his "salaried" status. Therefore, Plaintiffs cannot rebut the first element of the short test that they are paid "on a salary basis" as that term is defined in the FLSA.

B. Whether the primary duty of the plaintiffs is management of the fire department or a recognized subdivision.

██ The Department of Labor regulations describe the following types of work as management or exempt work:

(1) Interviewing, selecting and training of employees;

(2) Setting and adjusting the rates of pay and hours of work;

(3) Directing other employees' work;

(4) Maintaining other employees' production or sales records for use in supervision or control;

(5) Appraising other employees' productivity and efficiency for the purpose of recommending promotions or other changes in their status;

(6) Handling employee complaints and grievances and disciplining employees when necessary;

(7) Planning the work;

(8) Determining the techniques to be used;

(9) Apportioning the work among the workers;

(10) Determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; and

(11) Providing for the safety of the men and their property.

29 C.F.R. § 541.102(b).

This Court finds from the undisputed summary judgment evidence, affidavits, and admissions that the primary duty of the fire deputy chiefs and the fire district chiefs is management. The undisputed facts outlining their responsibilities clearly typify management work as outlined in 29 C.F.R. § 541.102(b).

C. Whether the plaintiffs customarily and regularly direct the work of at least two or more other employees.

Third, this Court finds from the undisputed summary judgment evidence, affidavits, and admissions that both the deputy chiefs and district chiefs customarily and regularly direct the work of two or more other employees. Each of the fire deputy chiefs supervise between fifteen and 186 other fire department personnel, including the fire district chiefs assigned to their respective divisions. Each of the fire district chiefs supervise at least nine other firefighters working in their respective districts.

## III.

The undisputed summary judgment evidence reflects that the fire deputy chiefs and the fire district chiefs are executive employees exempt from the overtime provisions of the FLSA under § 213(a)(1) because they meet all of the requirements for exempt executive status specified by the Department of Labor in 29 C.F.R. § 541.-1(f), the short test. *See Smith v. City of Jackson,* 954 F.2d 296, 299 (5th Cir.1992) (holding fire department district and battalion chiefs are exempt administrative employees under FLSA); *Hartman v. Arlington County, Virginia,* 903 F.2d 290, 291 (4th Cir.1990) (fire shift commander was a bona fide executive within meaning of FLSA). It is, therefore, ORDERED that Defendant's Motion for Summary Judgment is GRANTED. Accordingly, it is further ORDERED that all of Plaintiffs' claims are DISMISSED WITH PREJUDICE.

SO ORDERED.