1 F.3d 1241
 1 Wage & Hour Cas. 2d 1312
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lynn MARTIN, Secretary, Department of Labor, Plaintiff-Appellee,
v.
W.E. MONKS & COMPANY and Edgar Edwards, Defendants-Appellants.
 No. 92-3739.
 United States Court of Appeals, Sixth Circuit.
 Aug. 3, 1993.
 
 Before: MERRITT, Chief Judge, KEITH and SUHRHEINRICH, Circuit Judges.
 
 
 1
 Defendants-Appellants, W.E. Monks & Company ("Monks") and Edgar Edwards ("Edwards"), appeal a district court judgment for the Secretary of Labor ("Secretary"), in an action brought under Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C. Sec. 201, et seq. ("the FLSA"). For the reasons stated below, we AFFIRM the judgment of the district court.
 
 I.
 
 2
 The Secretary filed this suit on August 12, 1987, against Monks and its president and majority shareholder, Edwards, for failure to pay employee overtime wages, in violation of the FLSA. The FLSA requires employers to pay their employees one and one-half their regular pay rates for overtime, defined as all hours worked in excess of 40 in a work week. See 29 U.S.C. Sec. 207. The FLSA, however, exempts employees that are executives, administrators and professionals from its overtime provisions. See 29 U.S.C. Sec. 213.
 
 
 3
 After a four day bench trial, the district court entered a Memorandum and Order dated June 3, 1992, in favor of the Secretary. On June 4, 1992, the court entered a judgment enjoining Monks from continued withholding of back wages in contravention of the FLSA. The court also ruled that Monks should pay $19,517.14 in unpaid overtime compensation and that Edwards was liable as an employer due to his role as Monks' president and majority shareholder. Monks and Edwards ("the defendants") filed joint appeals, raising two issues regarding the district court's judgment. These issues are discussed seriatim below.
 
 II.
 
 4
 The defendants contend that the district court erred in its determination that thirteen of its employees were not salaried employees, and thus exempt from the overtime compensation provisions of the FLSA. In its Memorandum and Order, the district court summarized the evidence against the defendants as follows:
 
 
 5
 The alleged violation at the heart of this action is improper overtime compensation of thirteen Monks employees, generating an overtime pay shortage of $19,517.14. The Secretary alleges that these draftsmen, designers, and engineers are paid regular hourly rates multiplied by their hours worked, not compensated at rates for hours worked over eighty in a two-week pay period as required.
 
 
 6
 During trial of this action, the Secretary produced witnesses, including Monks' employees and U.S. Department of Labor investigator Deborah Board, to establish that thirteen Monks' employees were deprived of the full overtime compensation as provided in the FLSA. The former and current Monks' employees testified that they were never paid the statutory rate for overtime when they worked more than eighty hours in a two-week pay period. In fact, former Monks' employee Eugene Griffin stated that, after the initial Labor Department investigation in 1986, defendant Edwards told employees to record at least forty hours in each work week, even when they did not work forty hours, and then work more than forty hours the next work week to total an even eighty hours per pay period. Employees continued to be paid "straight time," not one and one-half their "straight time" rates, for overtime work.
 
 
 7
 (Memorandum and Order at page 6-7) (citations and footnote omitted). Investigator Board reviewed payroll records, employee earnings records, and employee time sheets in reaching a determination that Monks was in violation of the FLSA's overtime compensation provisions. The Secretary alleged that the following Monks employees did not receive adequate overtime compensation: Richard Braddock ($40.80), Michael Geary ($5,128.64), Eugene Griffin ($3,672.48), Thomas Howard ($2,090.57), Adel Magaziner ($1,771.68), Laura Martino ($1,714.69), Todd Miller ($2,521.34), Todd Borton ($94.21), James Brooks ($680.57), Robert Garrity ($1,345.75), Daniel Grieshop ($354.18), George Lucas ($57.23), and Dan Milosevich ($45.00). (Memorandum and Order at page 7-6)
 
 
 8
 The defendants contend that this Court should review de novo the district court's finding regarding whether the employees were paid on a salary basis. They rely on Brock v. Mr. W. Fireworks, Inc., 814 F.2d 1042 (5th Cir.1987), as support for this proposition. In Brock, the Fifth Circuit addressed the legal standards for determining employee status under the FLSA, stating that:
 
 
 9
 The ultimate finding as to employee status is not simply a factual inference drawn from historical facts, but more accurately is a legal conclusion based on factual inferences drawn from historical facts. We thus have held repeatedly that the ultimate determination of employee status is a finding of law subject to de novo consideration by this court.
 
 
 10
 814 F.2d at 1045. The Brock Court went on to explain that a court's factual findings regarding employee status is subject to the clearly erroneous standard of review, while the ultimate determination of employee status is subject to plenary or de novo review. We agree with this approach and find that it is consistent with Rule 52(a) of the Federal Rules of Civil Procedure. Rule 52(a) states that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a).
 
 
 11
 Accordingly, we review the district court's findings of fact regarding whether the employees at issue were salaried employees under the FLSA by applying the clearly erroneous standard. We review de novo the district court's ultimate determination of whether the employees at issue were salaried employees and thus exempt from the FLSA's overtime compensation provisions.
 
 
 12
 The district court found that it was "evident from the pay records included as exhibits in this trial" that each of the employees at issue in this suit "worked more than eighty-hours in certain eighty-hour pay periods and that they were compensated at their regular rates instead of one and one-half times those rates." (Memorandum and Order at page 8). As the district court noted, "[t]he defendants do not dispute that the employees sometimes worked more than eighty hours in certain pay periods and that these employees were compensated for the extra hours at their regular rate." Id. Accordingly, the district court found that the employees at issue were not compensated at one and one-half times their regular salary for overtime work.
 
 
 13
 As a defense to the Secretary's allegations of overtime violations, the defendants contend that the employees at issue are exempt from the FLSA's overtime provisions because they are "professional" employees. The exemption of professional employees from the FLSA's overtime provisions is found at 29 U.S.C. Sec. 213 and provides, in pertinent part, as follows:
 
 
 14
 (a) The provisions of sections 206 and 207 of this title shall not apply with respect to--
 
 
 15
 (1) any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesmen....
 
 
 16
 As the district court noted, 29 C.F.R. Sec. 541, et seq. provides the factors to be considered when determining if an employee is a "professional" exempt from the FLSA's overtime provisions found at 29 U.S.C. Sec. 207. (See Memorandum and Order at page 9). The district court correctly noted that when determining whether employees are "professionals" as defined under 29 C.F.R. Secs. 541.311(a) and 541.313, "at the onset of the analysis the FLSA is clear that a professional employee must be compensated on a salary or a fee basis, not hourly." Id. at 11 (citations omitted).
 
 
 17
 The district court concluded that the employees at issue were not salaried employees, explaining its ruling as follows:
 
 
 18
 Evidence shows that the employees' billable work rates were based upon an annual compensation figure, what each would receive if he or she worked full-time, forty hours per week. However, testimony clearly shows that employees were never guaranteed that annual amount, barring absences of one day or more. In fact, on certain occasions, employees worked fewer than forty hours in a week and received less than a full period's pay, even if those absences were for less than one day. In short, employees might have been led to believe they would receive a certain salary amount but were not guaranteed that amount and often did not receive that amount, regardless of absences allowed under the FLSA.
 
 
 19
 In fact, in an apparent attempt to compensate employees with a "regular" amount, defendant Edwards instructed employees to declare that they worked forty hours in a week on their time sheets, regardless of their actual hours worked, to receive their allotted amount in pay. However, they were told to "make up" the following week any hours that they had actually worked below forty the previous week, thereby working more than forty hours during that second week. Employees were paid for these extra hours at their hourly rates. Employees were paid less for days in which they worked less than the full day. This reduction is in direct opposition to the regulation's requirements for salary compensation. At other times, employees were instructed to assign part-day absences to vacation or sick leave time.
 
 
 20
 (Memorandum and Order at pages 13-14) (citations omitted). We find no reversible error in the court's findings that the employees at issue were not salaried employees. Additionally, we find no reversible error in the district court's ultimate conclusion that the employee's at issue were not "professionals" exempt from the FLSA's overtime provisions.
 
 III.
 
 21
 Even if the employees at issue are found to be hourly employees rather than salaried employees, the defendants contend that the district court erred in its determination that the "window of correction" provision, 29 C.F.R. Sec. 541.118(a)(6), was inapplicable in the instant case. Section 541.118(a)(6) provides, in pertinent part:
 
 
 22
 [W]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.
 
 
 23
 The district court ruled that the "window of correction" did not apply because "[t]here was no inadvertence" in the defendants method of paying its employees and "the employees were not salaried." (Memorandum and Order at page 16). As support for its ruling, the court cited Martin v. Malcolm Pirnie, Inc., 949 F.2d 611 (2nd Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 298 (1992). We agree with the court's ruling that the "window of correction" is unavailable to the defendants. However, the court misinterprets the requirements for the applicability of the "window of correction" by construing inadvertence as a requirement of Sec. 541.118(a)(6).[1]
 
 
 24
 The correct interpretation of Sec. 541.118(a)(6) is stated in Keller v. City of Columbus, Indiana, 30 Wage & Hour Cas. (BNA) 1095, No. IP 89-179-C (S.D.Ind.1991), where the court wrote:
 
 
 25
 Whether the policy allowing hourly deductions was inadvertent need not be considered. The regulation provides that the "window of correction" option applies when a deduction is inadvertent "or is made for reasons other than lack of work." ... In this case, the policy allowed a deduction for missing work, not because there was a lack of work. The tangential debate about whether temporal duration of the policy qualified as "inadvertent" is unnecessary.
 
 
 26
 Id at 40. Thus, the "window of correction" applies when an employer establishes that its employees were salaried employees and that the impermissible deductions from their salaries "is inadvertent, or is made for reasons other than lack of work." 29 C.F.R. Sec. 541.118(a)(6) (emphasis added).
 
 
 27
 In this case, the deductions were made because the employees chose to absent themselves from work, not because there was a lack of work. Making deductions for personal time absences of less than a day is not permitted under the FLSA, but is insufficient to deny the employer the exemption, provided the other requirements of Sec. 541.118(a)(6) are met. Since the employees at issue in this case were not paid as salaried employees, Sec. 514.118(a)(6) is not available to the defendants. See Dole v. Walker and Armstrong, 763 F.Supp 1052, 1054 (D.Ariz.1990) ("Because defendants' employees are not paid on a salary basis and thus not exempt under the Fair Labor Standards Act, there is no preservable exempt status under Sec. 541.118(a)(6)."). Accordingly, we agree with the district court's ruling that the defendants were not entitled to a "window of correction" exemption.
 
 IV.
 
 28
 For the foregoing reasons, we AFFIRM the judgment of the Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio.
 
 
 29
 MERRITT, Chief Judge, dissenting.
 
 
 30
 I agree with the majority that the factual findings of the district court are to be reviewed under the clearly erroneous standard. Based on my examination of the record, I believe those findings of fact are substantially correct. However, as the majority points out, the ultimate determination as to whether the employees in question are paid on an "hourly" or "salaried" basis is a question of law, reviewable de novo. I do not agree that, under a proper application of the FLSA regulations, the district court's factual findings can support its legal conclusion that the employees in question were paid on an hourly basis. This is especially true when the "window of correction" provision, 29 C.F.R. Sec. 541.118(a)(6), is duly applied to excuse the two instances in which employees were improperly denied full compensation for a 40-hour workweek.
 
 
 31
 Defendant Marks is a small firm. The outcome of this litigation directly affects only 13 present and former employees who worked overtime during a period of several years; four of them are entitled to less than $100 each in back pay under the majority's ruling. However, the remaining employees add to this substantially, accounting for a total of nearly $20,000 to be assessed against the defendant firm, and I believe the justifications for doing so merit greater (and more critical) scrutiny than was afforded by the majority.
 
 
 32
 The district court's opinion, quoted at some length by the majority, slip op. at ___, indicates two primary factors driving its conclusion that defendants' employees were paid on an hourly, as opposed to a salaried, basis. Defendant Edwards instructed the employees to declare on their time sheets that they worked 40 hours each week even if they actually worked fewer hours that week. Although the employees were expected to "make up" any deficit in actual hours worked by working extra hours during subsequent weeks, those hours, if reported as hours in excess of 40, would be compensated at the computed hourly rate of each employee, over and above their normal salary for the week. I believe this factual finding works in favor of defendants, rather than against them. Defendants assured this court at oral argument that the only penalty for continued failure to report to work during the normal business hours kept by the firm is the penalty reserved for any employee in any workplace for failing to meet the expectations of the employer: the threat of dismissal. As long as the employees perform enough work over an extended period of time (billed directly through to the firm's clients on an hourly basis) to justify their salaries, all would be well. This arrangement bears a striking resemblance to a law firm in which billable hours ultimately count far more in determining an associate's worth to the firm than the number of hours spent inside the building in any particular week.
 
 
 33
 The other finding which apparently influenced the district court's conclusion regarding pay status was that employees sometimes worked fewer than 40 hours in a single week during a pay period and consequently were paid less than the "predetermined amount constituting all or part of" their compensation, 29 C.F.R. Sec. 541.118(a). First, this finding is facially inconsistent with a policy directing employees to declare 40 hours each week regardless of actual hours worked; it would be extremely hard for the employer to simultaneously enforce both policies. Second, a careful examination of the record reveals that only six of the thirteen employees ever had their pay reduced for any reason. Of those six, four had deductions made for reasons that are fully covered and excused by the FLSA regulations. For example, George Lucas began and completed his term of employment in the middle of pay periods, and thus was not paid for the one-week portions of those periods during which he was not employed. This policy is expressly permitted under subsection 541.118(c). He also took a week's vacation for which he had not accumulated leave time, and defendants did not pay him for that week. This policy as well is expressly permitted; see subparagraph 541.118(a)(2). The isolated deductions from the paychecks of Adel Magaziner, Eugene Griffin, and Robert Garrity were similarly valid (under subparagraphs (a)(3), (a)(2), and (a)(2), respectively). Only Todd Borton and Todd Miller had deductions made that may have been violative of the regulations.
 
 
 34
 My reading of the record thus indicates violations of the regulations affecting at most two employees for a minute total of 11 hours from a period in which all employees were compensated for some 175,000+ hours, or roughly six thousandths of one percent. The "window of correction" provision, Sec. 541.118(a)(6), is tailor-made for such a situation. The majority properly concludes that such deductions may be excused even if not inadvertent; the subsection expressly applies to deductions made for reasons other than "when there is no work available," if the employer corrects its mistake and promises to comply in the future. But the majority then totally eviscerates the provision by denying the exemption to defendants, "[s]ince the employees at issue in this case were not paid as salaried employees." Slip op. at ___. This presents a tautology from which no employer could possibly escape: The employees are not salaried because impermissible deductions were made. Those deductions are impermissible (and not excused under the "window of correction") because employees have been found to be not salaried. If, as the majority implies, the employees' deductions could be excused under the window of correction if not for the earlier finding of non-salaried status, then it follows that those deductions should not be considered in making the pay status finding.
 
 
 35
 I find no evidence of hourly pay status in the policy of declaring 40 hours per workweek regardless of actual hours worked; as I have explained, this rather leads to the contrary conclusion. Likewise, I find no inexcusable deductions to have been made from the salaries of defendants' employees. The district court's conclusion that the employees were paid on an hourly rather than a salaried basis is therefore bereft of support. The employers in this case have done nothing which should deny them the exemption from overtime compensation provided by the Secretary's own regulations. I dissent.
 
 
 
 [1]
 We note that the Malcolm Pirnie Court, like the district court in the instant case, appears to have similarly misconstrued 29 C.F.R. Sec. 541.118(a)(6). See Malcolm Pirnie, 949 F.2d at 615-617